COURT OF CHANCERY
OF THE
STATE OF DELAWARE

PATRICIA W. GRIFFIN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947

Final Report:        December 19, 2018
Date Submitted:   September 11, 2018

Jason C. Powell, Esquire
The Powell Firm, LLC
1201 N. Orange Street, Suite 500
PO Box 289
Wilmington, DE 19899

Thomas Uebler, Esquire
Kerry Porter, Esquire
McCollom D'Emilio Smith & Uebler
2751 Centerville Road #401
Wilmington, DE 19808

David J. Ferry, Jr., Esquire
Rick S. Miller, Esquire
James Gaspero, Esquire
Ferry Joseph, P.A.
824 N. Market Street, Suite 1000
PO Box 1351
Wilmington, DE 19899

RE:   *Christine Muirhead v. Perry Mace*
       C.A. No. 2017-0569-PWG

Dear Counsel:

Pending before me is a motion to intervene in an action post-judgment.  The

original petition in this case was filed by the potential intervenor ("intervenor")'s

sister against her uncle, individually and as executor of their grandfather's estate,

seeking to invalidate a 2014 will and durable power of attorney executed by their

grandfather because of his alleged lack of testamentary capacity, and of undue

influence, at the time he executed those documents. The petition also sought to invalidate a restatement of trust subsequently signed by the intervenor's uncle as the grandfather's agent, which allegedly made the trust payable to the uncle and eliminated the intervenor and sister's interests in the trust. Based upon the parties' agreement, the case was dismissed by the Court with prejudice. Five months following the dismissal, the intervenor filed his motion to intervene. Because the motion to intervene is untimely, I recommend that the Court deny the motion. This is a final report.

## I. Background

Christine Muirhead ("Christine") filed, on August 8, 2017, a petition against Perry Mace ("Perry"), individually and as executor of the estate of Herbert B. Mace ("Herbert"), and as trustee of Herbert B. Mace Revocable Trust and of Josephine M. Mace ("Josephine") Revocable Trust, for review of proof of will, to invalidate restatement of trust, to invalidate durable power of attorney ("POA"), to declare rights under trust and for related equitable relief.[1] In that petition, Christine claimed that Herbert's 2014 will and 2014 POA were invalid because he lacked testamentary capacity and was unduly influenced by Perry when those documents were executed, that the 2016 restatement of Herbert's Revocable Trust was also invalid because it was executed by Perry pursuant to the invalid POA, and

---

[1] I use first names in pursuit of clarity and intend no familiarity or disrespect.

that Christine is entitled to an interest in real property under Josephine's Revocable Trust. She asserts, based upon the trusts and wills in effect before the invalid changes, she is entitled to a 25% interest in Rehoboth Beach property owned by the trusts, which she owns as tenant-in-common with Perry and Jason Calvetti ("Jason"), her brother. On September 19, 2017, a waiver of service by Jason was filed, in which he acknowledged receiving a copy of the petition on September 11, 2017 and waived formal service.[2] The parties stipulated to an extension of time for Perry to respond to the petition and on February 6, 2018, the parties' stipulation and dismissal of the case with prejudice was ordered by the Court.[3] On July 23, 2018, Jason filed a motion to intervene ("Motion") in the action, which was opposed by Perry on August 24, 2018, and briefing on the Motion followed.

## II.  Analysis

The issue is whether Jason is entitled to intervene in this action under Court of Chancery Rule 24(a) or (b). Jason argues that he is entitled to intervene under Court of Chancery Rule 24(a) because he has an interest in the property at issue in the action and he did not intervene in the action at an earlier time because his interest was adequately represented by Christine, who was entitled to the same relief as he was. He claims that he had no reason to intervene in the action until

---

[2] Docket Item ("D.I.") 8.

[3] D.I. 10.

Christine settled her claim against Perry and no longer adequately represented his interests.[4] When he learned about her actions, "he sought independent counsel to continue litigation against [Perry]."[5] Alternatively, Jason asserts that the Court should permit him to intervene under Rule 24(b) because his claims have common questions of law and fact with this action, intervention will not unduly delay or prejudice the adjudication of the original parties' rights. He also argues that his motion is timely. Perry opposes Jason's intervention, claiming the motion is untimely since Jason has known about this case since September of 2017 and failed to seek to intervene at an earlier stage in the case. He also claims that the prejudice to him outweighs any prejudice to Jason, because the estate has been closed, estate assets distributed, and he may have to defend time-barred claims.[6] Also, Perry argues there are no unusual circumstances that would justify intervention following dismissal of the action, such as evidence of collusion or fraud between the parties which prejudiced Jason's rights.

---

[4] D.I. 11, ¶ 23.

[5] *Id.*, ¶ 24.

[6] Perry argues that Jason seeks to "end-run the six-month statutory limitations period that he missed to challenge [Herbert]'s will," and that Jason's claim to review the proof of will would not relate back to the date that Christine filed the action, since 12 *Del. C.* § 1309 is a statute of repose. D.I. 15, at 6-7. Jason responds that considerations of equity permit his claim to relate back, similar to equitable considerations under Court of Chancery Rule 15(c) and there is no prejudice. D.I. 17, at 9-10. I do not address that issue related to this Motion.

4

Rule 24 provides that, for timely applications to intervene, (a) a person has a right to intervene in an action if he claims an interest in the property which is the subject of the action and denial of his intervention may impair or impede his ability to protect that interest, unless his interest is adequately represented by existing parties; and (b) intervention may be permitted if the claim has a common question of law or fact with the main action and the intervention will not unduly delay or prejudice the existing parties.[7]

Timeliness is a fundamental requirement for intervention and a "flexible concept, requiring consideration of all the circumstances of a particular case."[8] The timeliness analysis "rests in the sound discretion of the trial court."[9] Post-judgment intervention, as is sought in this case, is "unusual and infrequently granted."[10] It is not automatically denied but "courts have required a strong showing that the circumstances justify the intervention due to concerns about

---

[7] Ct. Ch. R. 24(a), (b).

[8] *Dugan v. Dineen*, 1990 WL 82719, at *5 (Del. Ch. June 12, 1990); *see also Shawe v. Elting*, 2015 WL 5167835, at *2 (Del. Ch. Sept. 2, 2015) ("[A]s a prerequisite to intervening under either [Court of Chancery] Rule 24(a) or (b), the proposed intervenor must make timely application.") (citation omitted); *Sutherland v. Sutherland*, 2015 WL 894968, at *4 (Del. Ch. Feb. 27, 2015); *Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*, 2015 WL 778846, at *4 (Del. Ch. Feb. 24, 2015) ("[t]ardiness in moving to intervene can be a valid reason to deny a motion for intervention") (citations omitted).

[9] *Great Am. Leasing Corp. v. Republic Bank*, 2003 WL 22389464, at *1 (Del. Ch. Oct. 3, 2003).

[10] *Dugan*, 1990 WL 82719, at *5.

prejudice and judicial order."[11]  Factors that courts have considered in determining timeliness for purposes of intervention include:  "(1) the length of time the movant knew or reasonably should have known of [his] interest before [he] petitioned to intervene; (2) prejudice to the existing parties due to failure to petition for intervention earlier; (3) the prejudice the movant would suffer if not allowed to intervene; and (4) the existence of unusual circumstances weighing either for or against intervention."[12]  There is no "bright-line rule" in determining when a motion to intervene is untimely, and cases "finding untimeliness or expressing serious concern about unwarranted delay involved delays of between five and twelve months."[13]

A key factor in determining timeliness is when the potential intervenor knew or reasonably should have known about the need to intervene, or whether he "was in a position to seek intervention at an earlier stage in the case."[14]  Courts

---

[11] *Sutherland*, 2015 WL 894968, at *4; *Shanghai Power Co. v. Delaware Tr. Co.*, 1975 WL 4181, at *2 (Del. Ch. July 11, 1975) (acknowledging courts' reluctance "to allow intervention after the action has gone to judgment and to require that a strong showing be made by a post-judgment applicant for intervention, even where intervention is of right rather than permissive").

[12] *Shawe*, 2015 WL 5167835, at *2 (analyzing factors identified for determining the analogous timely application requirements in Rule 24 of the Federal Rules of Civil Procedure).

[13] *Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*, 2015 WL 778846, at *5 (Del. Ch. Feb. 24, 2015) (citations omitted).

[14] *See Shawe*, 2015 WL 5167835, at *2; *Great Am. Leasing Corp. v. Republic Bank*, 2003 WL 22389464, at *1 (Del. Ch. Oct. 3, 2003).

have "generally been reluctant to allow intervention when the applicant appears to have been aware of the litigation but has delayed unduly in seeking to intervene."[15] Here, Jason had actual notice about the case by, at least, September of 2017, when his consent to waive service of the petition was filed. The litigation itself moved relatively quickly – the petition was filed in August of 2017 and a stipulated order of dismissal was entered by the Court in February of 2018. Jason filed this Motion in July of 2018 – five months following the dismissal. Jason's justification is that his interests were the same as Christine.[16] And he thought Christine was representing his interests until he "discovered" the case was dismissed after Christine and Perry "entered into a settlement agreement that awarded [Christine] a particular sum of money in return for withdrawing her Petition."[17] He alleges he was not informed of the settlement by the parties, even though they were aware of his interest in the matter; and when he received knowledge about the settlement, he sought independent counsel to continue litigation against Perry.[18] Jason has not provided information detailing exactly when he learned about the dismissal, which

---

[15] *Great Am. Leasing Corp.*, 2003 WL 22389464, at *1.

[16] Christine stated in her petition that the "only other person having a potential interest in this review proceeding is [her] brother, Jason," and that "Jason's rights . . . are the same as [hers]." D.I. 1, ¶ 24.

[17] D.I. 11, ¶ 18.

[18] D.I. 17, at 8; D.I. 11, ¶ 24.

could explain whether his delay after learning about the dismissal was significantly shorter than is evident from the information provided.

And, whether motivated by misplaced trust in Christine's loyalty in representing his interests – or the desire to "sit back" while Christine undertook the cost and burden of litigation, Jason was aware of the case and chose not to intervene earlier in the proceedings.[19]  Given his decision to "stand on the sidelines" in this case, it is reasonable to expect that he monitor progress in the case to protect his own interests.  Given these considerations, he reasonably should have known about the need to intervene in the case much earlier.

Other factors to consider in determining timeliness for intervention include whether permitting Jason to intervene would cause prejudice to the original parties and whether Jason will be prejudiced if intervention is denied.  Christine has not responded concerning Jason's Motion or claimed any prejudice to her if Jason is allowed to intervene.  Perry's opposition to the Motion focuses on the burden on him if he, as executor, is required to litigate "time-barred" claims related to Herbert's estate, which is closed.[20]  Undoubtedly, reopening this matter would be

---

[19] Jason may have thought that Christine would be motivated by sibling loyalty to represent his interests, but that did not occur and there is no evidence that Christine owed Jason a fiduciary duty or other legal obligation to represent his interests in this matter.

[20] This relates to the argument that Jason's intervention would relate back to the time the petition was filed, bringing him into compliance with the six-month limitation in 12 *Del. C.* § 1309 for contesting the validity of a will. *See* n. 6 *supra.*

burdensome to the parties, particularly considering the parties' efforts negotiating their settlement which might be upset through the intervention. And Jason will also suffer prejudice because, without being allowed to intervene, his ability to contest Herbert's will is likely foreclosed. Intervention will cause both parties to suffer prejudice in some form.

The final factor related to the timeliness to intervene considers any "unusual circumstances weighing for or against intervention."[21] I consider that post-judgment intervention requires a strong showing of entitlement because of the tension between the "hazards of upsetting final judgments" and the concern that an intervenor "will be bound by a judgment" when he has not had "an opportunity to protect" his interests.[22] Judgment occurred in this case in February of 2018 and Jason failed to seek intervention until five months later – and 10 months from when the court record shows he had notice of the action. Here, it appears Jason "stood on the sidelines" in the action, expecting that his sister's sibling loyalty would cause her to act in his best interests, in addition to her own. That assumed reliance on her fidelity – without any apparent legal duty to do so – was, sadly, misplaced. And, there is no allegation that Christine or Perry colluded or acted fraudulently – such as by giving Jason false information regarding the status of the

---

[21] *Shawe v. Elting*, 2015 WL 5167835, at *3 (Del. Ch. Sept. 2, 2015).

[22] *Dugan v. Dineen*, 1990 WL 82719, at *5 (Del. Ch. June 12, 1990).

litigation – Jason only asserts that they didn't inform him when the matter settled. Jason knew the case was proceeding and failed to make an effort to determine what was happening in the case, apparently for extended periods of time. His delay in filing the Motion may have resulted from inattention but were inexcusable, given the circumstances. Weighing all of the factors pertaining to timeliness discussed above, I find the circumstances, when considered as a whole, weigh against permitting Jason to intervene at this late date. Jason has not made the strong showing necessary to justify intervention in this case.

### III.    Conclusion

For the reasons set forth above, I recommend that the Court deny Jason's motion to intervene. This is a final report and exceptions may be taken under Court of Chancery Rule 144.

Sincerely yours,

/s/  Patricia W. Griffin

Patricia W. Griffin
Master in Chancery

PWG/kekz

10